ERICA L. CRAVEN-GREEN (Bar No. 199918)
Email: ecravengreen@gmail.com
Law Offices of Erica L. Craven-Green
P.O. Box 460367
San Francisco, California 94146-0367
Telephone: (415) 572-9028

PAUL ALAN LEVY, *pro hac vice* to be sought
Email: plevy@citizen.org
DEEPAK GUPTA
Email: dgupta@citizen.org
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC  20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795

Attorneys for MediaPost Communications

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ROCKY MOUNTAIN BANK, a Wyoming Corporation, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., a Delaware corporation, <br><br> Defendant. | Case No. 5:09-CV-04385 JW <br><br> MOTION TO UNSEAL AND MEMORAN-DUM SUPPORTING MOTION TO UNSEAL <br> F. R. Civ. P. 5; common law; First Amendment <br><br> Date: December 7, 2009 <br> Time:  9 AM <br> Courtroom: Courtroom 8, 4th Floor <br> Judge Ware |

**NOTICE OF MOTION AND MOTION TO UNSEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that, on Monday, December 7, at 9 AM, or as soon thereafter as the matter may be heard by this Court, located at 280 South 1st Street, San Jose, California, MediaPost Communications will move and hereby does move the Court, pursuant to Rule 5 of the Federal Rules of Civil Procedure, the First Amendment, and the common law, to unseal the report that Google lodged with the Court in chambers explaining its compliance with the Temporary Restraining Order issued in this case on September 23, 2009.  The report is a judicial record and thus subject to the strong presumption of public access, and movant wants to see the document for the purpose of

continuing to report on this case.

This motion seeks the following relief: an order unsealing Google's report to the Court.

Respectfully submitted.

        /s/ Erica L. Craven-Green
Erica L. Craven-Green (Bar No. 199918)

Email: ecravengreen@gmail.com
Law Offices of Erica L. Craven-Green
P.O. Box 460367
San Francisco, California 94146-0367
Telephone: (415) 572-9028


        /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)
Deepak Gupta (DC Bar No. 495451)

Public Citizen Litigation Group
Email: plevy@citizen.org
1600 - 20th Street, N.W.
Washington, D.C. 20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795

October 20, 2009                                    Attorneys for MediaPost Communications

**MEMORANDUM OF POINTS AND AUTHORITIES**

In this case, a bank that mistakenly sent records to a Google email address sued to identify the account holder for that email address and to freeze the account, without any proof that the account holder had violated the bank's rights in any way and without any proper basis either for suing Google or for federal court jurisdiction. Proceeding *ex parte*, without complying with Rule 65 or affording due process to either Google or the account holder, the bank secured an temporary restraining order ("TRO") compelling Google to identify its account holder and to file a document with the Court showing how it complied with that order. Instead of defending its user's rights, Google filed a document with the Court explaining how it was complying with the Court's order. Google sent the document to chambers instead of filing it on the public docket.

The document submitted by Google is a judicial record that is subject to the presumption of openness. The public should be able to see Google's report so that it can understand how the Court's TRO was satisfied, and why the Court dismissed the action. Therefore, the report should be unsealed.

**I. FACTS AND PROCEEDINGS TO DATE**

According to the plaintiff, this action began when a customer of Rocky Mountain Bank asked the bank to send some of his records to a third party by email. Rocky Mountain, however, did not send its email to the correct address of the third party; instead, the email was sent to an address in the form XXX@gmail.com. This email account belonged to an unidentified individual who is referred to in these papers as Jane Doe (movant does not know the gender of the Doe). Compounding its error, Rocky Mountain did not simply attach records belonging to the requesting customer to the mis-addressed email, but attached information relating to more than one thousand different customer accounts. After discovering the error and making an unsuccessful effort to recall the email, the president of Rocky Mountain sent a second email to the gmail account in question, "instructing" the recipient to delete the mistaken email without opening it, and "requesting" the recipient to contact the bank to discuss the matter. Hendrickson Affidavit, Docket Entry No. 20 ("DN 20 "), ¶ 12.

At this point, Rocky Mountain did not know whether Jane Doe had actually received the email and its attachments, or whether Jane Doe had retained the materials. Indeed, it is quite common for

owners of email addresses to receive large amounts of spam that purport to be communications from banks, often purporting to warn the recipients that their accounts have been compromised and asking the recipients to contact the sender immediately, and often soliciting information about the sender. Such emails are often referred to as "phishing." *See* http://en.wikipedia.org/wiki/Phishing. The Federal Trade Commission has specifically warned consumers about opening email and attachments that purport to be from banks because that is a common form of phishing. *See* http://www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt089.shtm. In fact, many email providers have spam filters that are designed to eliminate purported communications from banks unknown to the recipient; one feature of gmail that makes it most attractive in the market for email services is gmail's reputation for having a very effective spam filter. *See* http://www.askdavetaylor.com/does_gmail_do_ a_ good_job_of_filtering_spam.html.[1]

Seeking to ensure that its customers' information remained private, Rocky Mountain decided to file suit to prevent Jane Doe from making any improper use of the documents that the bank had sent. Even if Rocky Mountain had a claim against Doe, there is a well-established procedure for suing an Internet user and seeking a subpoena to identify him or her, which can be enforced after the Doe receives notice and has an opportunity to oppose the discovery by showing that the plaintiff does not have a substantial claim of wrongdoing. *Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 72 Cal.Rptr.3d 231 (Cal.App. 6 Dist. 2008); *Highfields Capital Mgmt. v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005).

Rocky Mountain did not file such a suit. Instead, on September 17, 2009, Rocky Mountain filed this action against Google, alleging two counts: one for a declaratory judgment that it was entitled to identify Doe, DN 18, at 6, and one for injunctive relief against both Google and Doe, seeking to enjoin them both from accessing, distributing or using the documents, and ordering Google to identify Doe. *Id.* at 7. The Bank filed the action under seal on the theory that it needed to prevent embarrassment, but with the result that nobody was before the Court to point out the many flaws in

---

[1] The court can take judicial notice of these widely reported facts. After the case ended, a local newspaper in Rocky Mountain's home town reported that the mistaken email had not been opened by the gmail customer. *See* http://www.jhnewsandguide.com/article.php?art_id=5110. It is not known whether this is a fact that was mentioned in Google's report to the Court.

the Bank's complaint.

First, even assuming that Jane Doe did something wrong and could have been sued, Google was immune from suit for Doe's misuse of her email account, under section 230 of the Communications Decency Act, 47 U.S.C. § 230. *Fair Housing Council v. Roommates.com*, 521 F.3d 1157 (9th Cir. 2008) (*en banc*). Even if the state law claim is said to be predicated on some sort of state law intellectual property right, the Ninth Circuit has held that only federal intellectual property claims are exempt from section 230 immunity. *Perfect 10 v. CCBill*, 488 F.3d 1102 (9th Cir. 2007). Thus, none of the claims in the case were a proper basis for any relief in this case.

Moreover, although the complaint sought relief against Jane Doe, it did not name Doe as a defendant. There was a reason for this. Although Rocky Mountain Bank referred in passing to federal and state banking regulations that required the Bank to try to protect its customers' privacy, those regulations did not give the Bank any cause of action against either Google or Doe, and they did not create a basis for federal question jurisdiction. Indeed, although Rocky Mountain labeled each of its counts a "cause of action," neither count purported to state any cause of action . The counts just relied on principles of equity which, it contended, gave it a right to relief.

Because these principles of equity presumably arose under state law, the Bank asserted that the Court had diversity jurisdiction. But in order to obtain relief, given Google's section 230 immunity, Rocky Mountain would have had to sue Jane Doe; and, in any event, Rocky Mountain was seeking an injunction against Jane Doe, and therefore Doe should have been named as a defendant. But it is settled law that a diversity action cannot be filed against a Doe defendant.[2/] Indeed, "the essential elements of diversity jurisdiction must be alleged in the pleadings," 13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3602, at 372 (2d ed. 1984); *Brown v. Keene*, 33 U.S. (8. Pet.) 112 (1834), and because Rocky Mountain was unable to plead Doe's citizenship, it could not have sued Jane Doe in federal court. Nor could it solve this

---

[2/] *Menzies v. Doe*, 194 F.3d 174 (D.C. Cir 1999) (mem.); *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997); *McMann v. Doe*, 460 F.Supp.2d 259, 264 (D. Mass. 2006); *Meng v. Schwartz*, 305 F.Supp.2d 49 (D.D.C. 2004); *Stephens v. Halliburton Co.*, 2003 WL 22077752, *5 (N.D. Tex. Sept. 5, 2003).

-3-

1 problem by suing Google alone, because Doe remains the real party in interest and a diversity suit is
2 subject to dismissal unless the diversity of citizenship of all the defendants is alleged in the complaint.

3       Despite these flaws in its complaint, on September 18, Rocky Mountain filed a motion for a
4 temporary restraining order ("TRO") and a preliminary injunction. In violation of Rule 65, Rocky
5 Mountain neither gave notice to the adverse party nor furnished any explanation of why notice could
6 not be given before the TRO was heard. Indeed, because the Bank had discovered the problem on
7 August 17 but did not seek a TRO until September 18, it is hard to believe that the time required for
8 effective notice would have caused undue injury to the legitimate interests at stake.[3/] Moreover,
9 calling the relief sought a TRO was a misnomer, because the relief sought — an injunction against
10 dissemination of the mis-emailed documents and disclosure of Doe's identity, which was the entire
11 relief sought in the Complaint — could not possibly be characterized as "interim relief" pendente lite.
12 Like the Complaint, the TRO motion was filed under seal to avoid having to tell its customers what
13 had occurred. DN 13, at 3 (information "could potentially alarm the Bank's customers").

14       The Court denied the motion to file under seal, DN 11, and, on September 21, Rocky
15 Mountain refiled the complaint and the motion papers in redacted form, removing Jane Doe's email
16 address. We understand that Google was planning to oppose this application. However, on
17 September 23, without shortening the time for Google or Jane Doe to file a response, giving Google
18 any opportunity to respond to the motion, or taking steps to ensure that Doe had received notice of
19 the motion to identify her, this Court granted the TRO in its entirety. Document No. 23. The order
20 provided:

21     (1) Google and the Gmail Account holder are temporarily enjoined from accessing,
    using, or distributing the Confidential Customer Information;
22
    (2) Google shall immediately deactivate the Gmail Account;
23

---

24 [3/] Rocky Mountain recited the fact that it had sent to emails to Jane Doe but had received no
response; but it did not attach the emails, from which the Court might have been able to judge
25 whether they were of the sort that would likely have been disregarded as spam from an
unknown bank. For example, an effective notice might have been labeled as "Notice of
26 Subpoena." Indeed, the most effective way to achieve notice to Jane Doe would have been
to enlist the cooperation of Google itself, whose communications to Jane Doe would be less
27 likely to be discarded as spam and to be ignored.

28                                                                            -4-

> (3) Google shall immediately disclose to Plaintiff and the Court the status of the Gmail Account, specifically, whether the Gmail Account is dormant or active, whether the Inadvertent Email was opened or otherwise manipulated, and in the event that the Gmail Account is not dormant, the identity and contact information for the Gmail Account holder.

The Court scheduled a preliminary injunction hearing for September 28 and directed Google to file any response by September 25.

Rather than seeking reconsideration (or filing an immediate appeal and seeking a stay pending appeal) to protect its customer's rights under the First and Fifth Amendments, Google complied with the order. Specifically, it "lodged a Report with the Court in response to, and in compliance with, the Court's September 23, 2009 Order Granting Temporary Restraining Order." DN 28, at 2. Movant is advised that the document includes information identifying Jane Doe, but is not limited to such information. The report has not been placed on the docket, and its contents have not been made public, even in redacted form.

On September 25, Google and Rocky Mountain filed a joint motion to continue the preliminary injunction hearing and to vacate the TRO. The Court continued the hearing but declined to vacate the TRO, thus leaving the Gmail account frozen. On September 28, the parties filed a stipulation to dismiss the action with prejudice. In light of that stipulation, the Court vacated the TRO.

MediaPost reporter Wendy Davis broke the story about the Court's order granting plaintiff's request for a TRO and ordering the Gmail user's account deactivated, and published several stories about developments in the case.[4/] Subsequently, there was extensive coverage and criticism of this course of events, both in the United States and elsewhere, as bloggers and reporters commented on Rocky Mountain's use of the courts to shut down an email address and identify its user to make up for its own errors.[5/] MediaPost seeks to review the compliance report to help the public understand

---

[4/] *See* http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=114264; http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=114347.

[5/] *E.g.*, http://www.techdirt.com/articles/20090924/1705386309.shtml; http://www.dailymail.co.uk/sciencetech/article-1216883/Bank-sends-confidential-details-

-5-

how the Court reached its decision to vacate the TRO and to monitor how private parties are using — or abusing — courts' powers in this new species of case.

### III. **ARGUMENT**

**GOOGLE'S REPORT TO THE COURT IS A JUDICIAL RECORD THAT MUST BE DISCLOSED UNDER THE FIRST AMENDMENT AND THE COMMON-LAW REQUIREMENT OF PUBLIC ACCESS.**

The Supreme Court and the Court of Appeals for the Ninth Circuit have repeatedly upheld the public right of access to judicial records. *E.g.*, *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-1179 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *San Jose Mercury News v. United States District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

> The general rule is that the record of a judicial proceeding is public . . . . Not only do such records often concern issues in which the public has an interest . . . but also the public cannot monitor judicial performance adequately if the records of judicial proceedings are secret.

*Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002).

> Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. . . . A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. . . . That is, the party must "articulate[ ] compelling reasons supported by specific factual findings," . . ., that outweigh the general history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'"

*Kamakana v. Honolulu,* 447 F.3d at 1178-1179.

Several circuits have also held that the First Amendment creates a right of access to judicial records in civil cases, *e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120-121 (2d Cir. 2006); *Grove Fresh Distributors v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994), but the Ninth Circuit has not addressed that question.

**A. Google's Report to the Court Is a Judicial Record.**

---

wrong-e-mail-address--judge-orders-Google-suspend-account.html*;* http://www.telegraph.co.uk/technology/google/6239172/Bank-forces-Google-to-close-random-GMail-account-over-rogue-message.html.

-6-

Google's compliance report to the Court is a "judicial record" subject to scrutiny under this Court's precedents. The purpose of the Report was to explain Google's actions and to assure the Court that its order had been obeyed, and thus to aid the Court in ensuring compliance with its orders. The Seventh Circuit has applied the common law right of access to "those records of a proceeding that are filed in court or that, while not filed, are relied upon by a judicial officer in making a ruling or decision." *Smith v. United States District Court Officers*, 203 F.3d 440, 442 (7th Cir. 2000), *citing Grove Fresh*, 24 F.3d at 897. Likewise, the Third Circuit has held that "[w]hether or not a document or record is subject to the right of access turns on whether that item is considered to be a 'judicial record.' The status of a document as a 'judicial record,' in turn, depends on whether a document has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).

Google's report to the Court easily satisfies this test. Indeed, in their subsequent joint filing asking the Court to vacate the TRO, DN 28, both parties expressly relied on the information contained in the report to show that the relief requested in the motion for a preliminary injunction had become moot, that there was no longer any need for a hearing on a preliminary injunction, and that the TRO itself should be vacated. *Id.* at 2, ¶¶ 2, 3. And in its decision vacating the TRO, the Court said that it had relied on the pleadings submitted to it. In this regard, the Court was obviously treating the report as a pleading.

Nor does the fact that the report was sent to chambers instead of the Clerk's office affect its status as a judicial record, because Rules 5(d) and (e) of the Federal Rules of Civil Procedure required that the paper be transmitted to the Clerk's office. Under Rule 5(d), "[a]ll papers required to be served upon a party . . . must be filed with the court within a reasonable time after service." Although Rule 5(e) allows such papers to be filed with the judge, "in [that] event the judge shall . . . forthwith transmit them to the office of the Clerk." Thus, receipt by the Court's staff, or by a district judge, is sufficient to constitute "filing," even if the document is not noted in the docket. *Houston v. Lack*, 487 U.S. 266, 274 (1988); *Forgy v. Norris*, 64 F.3d 399, 401 (8th Cir. 1995); *United States v. Solly*, 545 F.2d 874, 876 (3d Cir. 1976).

-7-

Although we have not identified a case where a party's report to the Court about compliance with an injunction has been the subject of litigation under the public-access-to-court-records doctrine, in several cases where monitors have been appointed to assist in the implementation of consent decrees, the monitors' written reports to the Court have been treated as judicial records, subject to the general rule of public access. In *B.H. v. Ryder*, 856 F. Supp. 1285 (N.D. Ill. 1994), *aff'd sub nom B.H. v. McDonald*, 49 F.3d 294 (7th Cir. 1995), the court described the terms of a consent decree entered into between a class of neglected children and the Illinois Department of Children and Family Services (DCFS). The periodic reports of the court-appointed monitor for which that decree provided were filed publicly, appeared on the docket, and were available to the public. *Id.* at 1291. In affirming a district court order excluding the public from in-chambers conferences held to negotiate resolution of certain disputes under the decree, the Seventh Circuit emphasized that the interest in public scrutiny of the judicial process had been satisfied because "the public had access to all of the monitor's reports, the DCFS's responses to the reports, and the plaintiff's written replies to both of these submissions." 49 F.3d at 301. *Accord*, *Chao v. Estate of Fitzsimmons*, 349 F. Supp.2d 1082 (N.D. Ill. 2004).

Similarly, in the Southern District of New York, a court officer was appointed, pursuant to a consent decree between the United States and Local 100 of the Hotel and Restaurant Employees, to investigate allegations of corruption. *See United States v. Amodeo*, 71 F.3d 1044, 1047 (2d Cir. 1995) (describing mechanics of court officer's role in implementing the consent decree). In *Amodeo*, the court-appointed monitor was not required to file reports with the court, but did so anyway. These reports — both those she intended to be publicly available and those she believed should be kept confidential — are reflected in the docket. *See* S.D.N.Y Docket No. 1:92-cv-07744RPP ("*Amodeo* Docket"). The docket reflects her public reports as "letters" and also includes a record of material that she preferred remain confidential. *Amodeo*, 71 F.3d at 1044. The confidential reports were delivered directly to the district court judge in separate reports, *id.*, but nonetheless appear in the docket as "sealed" documents. *See Amodeo* Docket. In an initial decision, the Second Circuit held that the monitor's report, although delivered directly to chambers, was nevertheless a judicial record presumptively subject to public inspection. *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995).

-8-

1   A second decision following the district court's decision on remand held that part of the report was
2   to be released with redactions. 71 F.3d at 1052-1053.

3   Even apart from the common law right of access, Google's submission of its report to
4   chambers without making a public filing violated Local Rule 79-5, which requires a party that seeks
5   to submit a document that will not become public to obtain a court order by submitting a "request that
6   establishes that the document, or portions thereof, is privileged or protectable as a trade secret or
7   otherwise entitled to protection under the law . . .. The request must be narrowly tailored to seek
8   sealing only of sealable material . . .." Local Rule 79-5(a). The Local Rule requires the party seeking
9   sealing of an entire document to file an Administrative Motion to File Under Seal. Local Rule
10  7(b)(1). Google filed no such motion and did not obtain permission to give its report to the Court in
11  the informal manner that it employed.

12  Like the reports of the court-appointed monitors in *B.H.* and *Amodeo*, Google's report to the
13  Court showing its compliance with the TRO is a judicial record subject to the common law and
14  constitutional mandates of presumptive public access.

**B.     The Law Presumes That Google's Report Should Be Public, Absent Proof
        to the Contrary.**

Once it is established that the documents in question are judicial records, a strong presumption
of openness requires "compelling justification" to keep a particular record secret. *Kamakana v.
Honolulu,* 447 F.3d at 1178. As Judge Easterbrook has explained:

> People who want secrecy should opt for arbitration. When they call on the courts, they
> must accept the openness that goes with subsidized dispute resolution by public (and
> publicly accountable) officials. . . . Judges deliberate in private but issue public
> decisions after public arguments based on public records. . . . Any step that withdraws
> an element of the judicial process from public view makes the ensuing decision look
> more like fiat, which requires compelling justification.

*Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).
A part seeking secrecy must "articulate compelling reasons supported by specific factual findings,"
*Kamakana*, 447 F.3d at 1178, and a decision to keep a particular judicial record under seal can only
be based "on a compelling reason [that] articulate[s] the factual basis for [the] ruling, without relying
on hypothesis or conjecture." *Id.* at 1179.

-9-

When undersigned counsel sought Google's concurrence in this motion, the only ground given by Google for keeping the document secret was that it contains information that could identify Jane Doe. But that interest can adequately be protected by redacting the identifying information. *See Rocky Mountain Bank v. Google, Inc.* 2009 WL 3053716, *2 n.5 (N.D. Cal. 2009) (in denying motion to file complaint and motion papers under seal, Judge Whyte said that if future filings contain private customer information, the filing party should "move to seal the confidential portions of those filings pursuant to this court's Civil Local Rule 79-5"). On the other hand, Google's customers have a significant interest in knowing the quantity of identifying information about Jane Doe that Google released, as well as what efforts Google took to comply with the Court's TRO and whether Google took efforts to provide additional notice to Jane Doe of its actions. By publicly filing a redacted copy of the report, Google will reveal that information to its other customers, while still protecting the privacy of the Doe. Movant does, however, suggest that Google provide additional notice to the Doe of this Motion, so that she will have the opportunity to respond to this motion if she so chooses.

Beyond the interest of its customer, Google may be embarrassed at revealing publicly how easily it acquiesced in Rocky Mountain's violation of its customer's rights. However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. Honolulu*, 447 F.3d at 1179. Indeed, although Google and Rocky Mountain might well prefer to prevent disclosure of Google's report, only that disclosure can inform the public how the Court's TRO was satisfied, and why the Court dismissed the action. Disclosure in this case will enable MediaPost to report further on this case about how the courts function; for future purposes, disclosure will allow the public to ensure that private parties do not misuse the Court's procedure by seeking and obtaining emergency relief without notice and an opportunity for all adverse parties to respond.

**CONCLUSION**

The motion to unseal should be granted.

    /s/ Erica L. Craven-Green
Erica L. Craven-Green (Bar No. 199918)

-10-

                                            Email: ecravengreen@gmail.com
Law Offices of Erica L. Craven-Green
P.O. Box 460367
San Francisco, California 94146-0367
Telephone: (415) 572-9028

  /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)
Deepak Gupta (DC Bar No. 495451)

Public Citizen Litigation Group
Email: plevy@citizen.org
1600 - 20th Street, N.W.
Washington, D.C. 20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795

October 20, 2009                                  Attorneys for MediaPost Communications